UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MARCEL RIDDLE and RYAN COBLEY,

        Plaintiff,                       Case No. 2:13-cv-152

v.                                              Honorable Gordon J. Quist

ROBERT NAPEL, et al.,

        Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiffs leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiffs' complaint for failure to state a claim against Defendants Sampson, Latitinen, Prison Health Services and Belfry. The Court will serve the complaint against Defendants Prokasch-Graves, Grant, Napel, Alexander, Lutgens, Michellon, Kocha, Ehle and Heyns.

**Discussion**

I.      Factual allegations

Plaintiff Marcel Riddle, a state prisoner currently confined at the Gus Harrison Correctional Facility, and Plaintiff Ryan Cobley, a state prisoner currently confined at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Robert Napel, Parole Board Chairperson Barbara S. Sampson, MDOC Director Daniel Heyns, Prison Health Services, Deputy Warden James Alexander, Nurse Practitioner Jan Prokasch-Graves, Nurse Supervisor Mike Grant, Food Service Director Chris Lutgens, Nurse Practitioner Joshua Kocha, Health Information Manager Ambre Ehle, Maintenance Painter Supervisor Jim Michellon, Program Classification Director Roger Latitinen, and Sergeant Patricia Belfry.[1]

Plaintiffs claim that while they were incarcerated at the MBP Trustee Division in 2011 and 2012, they were exposed to black mold spores, toxic floor stripper, and toxic exterior paint which was being improperly used inside the dormitories. In addition, Plaintiffs were exposed to raw sewage gases for several months while construction was taking place because the sewage line had been dug up inside the chow hall. Consequently, Plaintiffs were forced to eat their meals in an unsafe setting.

---

[1] Other prisoners are named as Plaintiffs in this case. However, because Riddle and Cobley are the only two individuals to sign the complaint, the remaining prisoners are not proper parties to this action. The federal courts uniformly reject representation during litigation by unlicensed lay people. *See e.g. Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41 (1st Cir. 1982) (prisoners); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59 (2d Cir. 1990) (parent/child); *Bonacci v. Kindt*, 868 F.2d 1442 (5th Cir. 1989). *See also United States v. Whitesel*, 543 F.2d 1176 (6th Cir. 1976) (rule applied in criminal matter). A person may appear in the federal courts only *pro se* or through legal counsel. 28 U.S.C. § 1654. This Court's local rules prohibit representation by non-lawyers. W.D. Mich. L.R. 18(a). Plaintiffs Riddle and Cobley may not represent the other prisoners in this matter. Therefore, the Court will only address the claims that pertain to Plaintiffs Riddle and Cobley.

Plaintiff Riddle states that he suffers from chronic allergic rhinitis and sinusitis, as well as high blood pressure, and that this makes him susceptible to toxic mold and toxic chemicals. Plaintiff Riddle asserts that as a result of exposure to the mold and other toxic substances at MBP, he suffers from continuing toxic mold syndrome, with the following symptoms: recurrent respiratory tract infections, eye infections, stomach infections, abnormal white blood cell counts, a heart murmur, difficulty breathing, shortness of breath, headaches, muscle spasms, anxiety, dizziness, joint pains, post nasal drip, numbness and tingling in limbs, nausea, uncontrollable nerves, depression, mood swings, runny nose, sores in nose, sneezing, fatigue, acne, choking, sore throat, memory problems, abdominal pain, sweating, and other symptoms. Plaintiff Riddle states that he has complained of medical problems from May of 2011 until the present, but that medical personnel have denied him necessary treatment. Plaintiff Riddle claims that he was denied access to medical personnel for diagnosis and treatment of his respiratory disorders and illnesses.

On June 30, 2011, Defendant Prokasch-Graves became annoyed with Plaintiff Riddle after committing a medical mix-up and expelled Plaintiff Riddle from health services without providing treatment. On October 20, 2011, Defendant Prokasch-Graves denied Plaintiff Riddle treatment, telling him that she needed to contact Lansing regarding Plaintiff Riddle's claims of illness due to exposure to toxic chemicals. On November 8, 2011, Defendant Prokasch-Graves told Plaintiff Riddle that she did not want to hear about mold or other toxic substances, and that he would have to take the issue up with the housing unit staff. On November 16, 2011, Plaintiff Riddle complained of difficulty breathing, dizziness, sinus problems, headaches, and back pain as a result of black mold exposure. In response Defendant Prokasch-Graves told Plaintiff Riddle that his symptoms were "all in [his] head," and that he would be referred to mental health. On November 17, 2011, Plaintiff Riddle was seen by a psychiatrist via tele-med and was prescribed a "mental

health medication." Plaintiff Riddle asserts that he was humiliated by the mental health referral and suffers mental instability as a result.

Plaintiff Riddle states that between May 20, 2011, and November 20, 2011, he unsuccessfully filed grievances on Defendants Napel, Alexander, Grant, and Lutgens regarding the black mold and other toxins. On November 21, 2011, Defendant Grant interviewed Plaintiff Riddle on a step I grievance and stated, "I don't give a flying f**k how many grievances you write or how many lawsuits you files [sic], I'll always back up my employees' actions . . . I determines [sic] who you see and what treatment you'll receive."

On April 1, 2013, Plaintiff Riddle and Corrections Officer Pope showed Defendant Michellon the saturated ceiling in P-dorm, which contained toxic mold spores. On April 25, 2013, Plaintiff Riddle had chest x-rays. On May 3, 2013, Plaintiff Riddle was told by a nurse that he had pneumonia. However, Plaintiff Riddle did not receive any treatment or follow-up for this condition from Defendant Kocha.

Plaintiff Cobley alleges that in December of 2012 and March of 2013 he sought health care for complaints of blood in urine, extreme leg pain, nausea, sinus problems, fatigue, muscle aches, abdominal pain, allergies, shortness of breath, joint pain, numbness and tingling in extremities, cough, mood swings, and other symptoms. Plaintiff Cobley repeatedly waited 2 to 3 weeks for a medical appointment after filling out a health care request form. Plaintiff Cobley claims that he has not been seen or treated for the above symptoms. Plaintiff Cobley alleges that he constantly smells strong odors of mold, mildew and musk, and that on May 3, 2013, he was overcome by toxic mold spores "emitting from the emergency fire exit door being open." Plaintiff Cobley also claims that inmate painters are being supplied with "outdoor exterior industrial paints," to be used inside P-dorm unit, and that this causes inmates to be exposed to toxic fumes.

Plaintiff Cobley alleges that as a prerequisite to meet the reentry qualifications for being paroled, he is required to participate in the following federally funded programming: Assaultive Offender Program (AOP), Violence Prevention Program (VPP), Sex Offender Program (SOP), substance abuse counseling (segments I and II), and Thinking for Change. Plaintiff Cobley states that Defendant Latitinen is responsible for getting inmates into the necessary programs. On August 17, 2012, and September 13, 2012, Defendant Latitinen informed Plaintiff Cobley that he would be placed in programming as determined by CFA [Correctional Facilities Administration]. Plaintiff Cobley has still not been placed in the required programming and remains ineligible for parole as a result.

Plaintiff Cobley alleges that he is Jewish and sought a Kosher diet in June of 2012. Plaintiff Cobley was given a written test regarding his knowledge of the Jewish faith. On September 3, 2012, Plaintiff Cobley filed a grievance because he had not yet been placed on a Kosher diet. On September 7, 2012, Defendant Niemisto responded to Plaintiff's step I grievance, stating that Plaintiff Cobley's request had been forwarded to CFA Special Activities Coordinator Michael Martin. Defendant Alexander responded to Plaintiff Cobley's step II appeal by stating that a determination had not yet been made on his request for a Kosher diet. Defendant Heyns responded to Plaintiff Cobley's step III appeal on February 4, 2013, stating that his request for a Kosher diet was denied on December 3, 2012. Plaintiff Cobley states that he was never directly informed of the denial. Plaintiff Cobley continues to be denied a Kosher diet in violation of his right to freely exercise his religious beliefs.

Plaintiff Riddle alleges that on April 8, 2011, Defendant Ehle provided Assistant Attorney General Allan J. Soros with copies of Plaintiff Riddle's medical records in relation to *Riddle v. Caruso*, Case No. 2:10-cv-156 (W.D. Mich. Mar. 21, 2012) without first seeking

authorization from Plaintiff Riddle. Plaintiff Riddle sent a letter to Defendant Ehle complaining about the release of his medical records to Attorney General Soros. Defendant Ehle responded by stating that MDOC Policy Directive 03.04.108 ¶ Q(12) allows the release of such information without a prisoner's written authorization or court order as needed for litigation. Plaintiff Riddle filed a grievance regarding this matter, which was rejected by Defendant Alexander, who stated that the content of Policy Directive 03.04.108 was non-grievable. Plaintiff Riddle appealed the denial of his grievance to step II and step III, but his appeals were denied by Defendants Napel and Heyns. Plaintiff claims that the release of his medical information without his consent violated his constitutional rights.

Plaintiffs Riddle and Cobley assert that Defendants have a practice of moving level I prisoners to level V for disciplinary reasons without first being given a hearing. In addition, Plaintiffs state that on some occasions this confinement may last several weeks. Plaintiffs contend that this practice violates their due process rights.

Plaintiffs state that Defendants have violated their rights under the First, Eighth and Fourteenth Amendments, as well as under state law. Plaintiffs seek compensatory, punitive and nominal damages, as well as declaratory and injunctive relief.

II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff Cobley claims that he is being improperly denied participation in programming necessary for him to be parole eligible. Plaintiff Cobley asserts that this denial violates his right to due process. To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org.,*

*Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006).  Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole.  There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.  *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).  In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole.  *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003).  In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge.  *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010).  Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system.  *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff Cobley has served his maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. Therefore, the failure to enroll Plaintiff Cobley in the programming necessary for parole eligibility does not implicate a federal right. In the absence of a liberty interest, Plaintiff Cobley fails to state a claim for a violation of his procedural due process rights.

Plaintiff Cobley alleges that he was denied a Kosher diet and that Defendants Niemisto, Alexander and Heyns responded to his grievances regarding the failure to place him on a Kosher diet. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). However, none of the named Defendants in this case was involved in the denial of Plaintiff Cobley's request for a Kosher diet. The only role that any of the named Defendants had in the denial of Plaintiff Cobley's request for a Kosher diet involved the denial of administrative grievances or the failure to act. Defendants Niemisto, Alexander and Heyns cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Plaintiffs Riddle and Cobley contend that Defendants' practice of transferring level I prisoners to level V without a hearing violates their due process rights. However, Plaintiffs Riddle and Cobley fail to allege any specific facts indicating that either of them have been personally subjected to such treatment. Moreover, Plaintiffs Riddle and Cobley have no constitutional right to any particular placement or security classification. "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State . . . ."*Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). A change in security

classification to a higher level of security, with nothing more, is not the type of atypical and significant deprivation in which an inmate might have a liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 485-86 (1995); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Specifically, the Sixth Circuit has held that "the denial of participation in a community placement program is not the type of atypical and significant deprivation in which the state might create a liberty interest." *Davis v. Loucks*, No. 96-1583, 1997 WL 215517, at *1 (6th Cir. Apr. 29, 1997) (citing *Sandin*, 515 U.S. at 483-84)). In the absence of a recognized liberty interest, the placement of level I prisoners such as Plaintiffs Riddle and Cobley in a higher security level facility or increasing their security classification raises no issue of constitutional magnitude. Consequently, these allegations fail to state a claim upon which relief can be granted.

Moreover, to the extent that Plaintiffs' complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

The Court concludes that Plaintiffs Cobley and Riddle have stated nonfrivolous Eighth Amendment claims against Defendants Prokasch-Graves, Grant, Napel, Alexander, Lutgens, Michellon, and Kocha regarding exposure to black mold and other toxic substances, as well as for the subsequent denial of medical care. In addition, Plaintiff Riddle has set forth nonfrivolous First

and Fourteenth Amendment claims against Defendants Ehle and Heyns regarding the improper release of his medical information.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Sampson, Latitinen, and Belfry will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Prokasch-Graves, Grant, Napel, Alexander, Lutgens, Michellon, Kocha, Ehle and Heyns.

An Order consistent with this Opinion will be entered.


Dated: October 7, 2014 　　　　　　　　　　／s/ Gordon J. Quist　　　　
　　　　　　　　　　　　　　　　　　　　　GORDON J. QUIST
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE