UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MARCEL RIDDLE and RYAN COBLEY,

               Plaintiffs,                       Case No. 2:13-cv-152

v.                                              Honorable Gordon J. Quist

ROBERT NAPEL, et al.,

               Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. On October 7, 2014, this Court ordered service of Plaintiff's complaint on Defendants Prokasch-Graves, Grant, Napel, Alexander, Lutgens, Michellon, Kocha, Ehle and Heyns. On January 22, 2015, Defendants Alexander, Ehle, Heyns, Lutgens, Michellon, and Napel filed a motion for summary judgment (docket #55) on the ground that Plaintiff failed to exhaust his available administrative remedies. On February 6, 2015, Defendant Grant filed a motion for summary judgment (docket #60) on the ground that Plaintiff failed to exhaust his available administrative remedies. On April 6, 2015, Defendants Kocha and Prokasch-Graves filed a motion to dismiss (docket #64) for lack of prosecution or in the alternative for summary judgment for failure to exhaust administrative remedies as to Plaintiff Cobley. Finally, on April 28, 2015, Defendants Koch and Prokasch-Graves filed a motion to amend or modify the Case Management Order (docket #65). Plaintiff filed a response (docket #66) and on or about May 4, 2015. Upon review, I

recommend that the motions for summary judgment filed by Defendants Alexander, Ehle, Heyns, Lutgens, Michellon, Napel, and Grant (docket #55 and #60) be granted as to Defendants Alexander, Ehle, Heyns, Lutgens, Michellon, and Grant, and denied as to Defendant Napel. I also recommend that the motion for summary judgment filed by Defendants Kocha and Prokasch-Graves as to Plaintiff Cobley (docket #64) be granted.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see*

*also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

As noted in the October 7, 2014, opinion partially dismissing Plaintiffs' complaint:

> Plaintiff Marcel Riddle, a state prisoner currently confined at the Gus Harrison Correctional Facility[1], and Plaintiff Ryan Cobley, a state prisoner currently confined at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Robert Napel, Parole Board Chairperson Barbara S. Sampson, MDOC Director Daniel Heyns, Prison Health Services, Deputy Warden James Alexander, Nurse Practitioner Jan Prokasch-Graves, Nurse Supervisor Mike Grant, Food Service Director Chris Lutgens, Nurse Practitioner Joshua Kocha, Health Information Manager Ambre Ehle, Maintenance

---

[1] Plaintiff has since been paroled and is living in Detroit, Michigan.

Painter Supervisor Jim Michellon, Program Classification Director Roger Latitinen, and Sergeant Patricia Belfry.[2]

Plaintiffs claim that while they were incarcerated at the MBP Trustee Division in 2011 and 2012, they were exposed to black mold spores, toxic floor stripper, and toxic exterior paint which was being improperly used inside the dormitories. In addition, Plaintiffs were exposed to raw sewage gases for several months while construction was taking place because the sewage line had been dug up inside the chow hall. Consequently, Plaintiffs were forced to eat their meals in an unsafe setting.

Plaintiff Riddle states that he suffers from chronic allergic rhinitis and sinusitis, as well as high blood pressure, and that this makes him susceptible to toxic mold and toxic chemicals. Plaintiff Riddle asserts that as a result of exposure to the mold and other toxic substances at MBP, he suffers from continuing toxic mold syndrome, with the following symptoms: recurrent respiratory tract infections, eye infections, stomach infections, abnormal white blood cell counts, a heart murmur, difficulty breathing, shortness of breath, headaches, muscle spasms, anxiety, dizziness, joint pains, post nasal drip, numbness and tingling in limbs, nausea, uncontrollable nerves, depression, mood swings, runny nose, sores in nose, sneezing, fatigue, acne, choking, sore throat, memory problems, abdominal pain, sweating, and other symptoms. Plaintiff Riddle states that he has complained of medical problems from May of 2011 until the present, but that medical personnel have denied him necessary treatment. Plaintiff Riddle claims that he was denied access to medical personnel for diagnosis and treatment of his respiratory disorders and illnesses.

On June 30, 2011, Defendant Prokasch-Graves became annoyed with Plaintiff Riddle after committing a medical mix-up and expelled Plaintiff Riddle from health services without providing treatment. On October 20, 2011, Defendant Prokasch-Graves denied Plaintiff Riddle treatment, telling him that she needed to contact Lansing regarding Plaintiff Riddle's claims of illness due to exposure to toxic chemicals. On November 8, 2011, Defendant Prokasch-Graves told Plaintiff Riddle that she did not want to hear about mold or other toxic substances, and that he would have to take the issue up with the housing unit staff. On November 16, 2011,

---

[2]Other prisoners are named as Plaintiffs in this case. However, because Riddle and Cobley are the only two individuals to sign the complaint, the remaining prisoners are not proper parties to this action. The federal courts uniformly reject representation during litigation by unlicensed lay people. *See e.g. Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41 (1st Cir. 1982) (prisoners); *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.*, 906 F.2d 59 (2d Cir. 1990) (parent/child); *Bonacci v. Kindt*, 868 F.2d 1442 (5th Cir. 1989). *See also United States v. Whitesel*, 543 F.2d 1176 (6th Cir. 1976), *cert. denied* 431 U.S. 967 (1977) (rule applied in criminal matter). A person may appear in the federal courts only *pro se* or through legal counsel. 28 U.S.C. § 1654. This Court's local rules prohibit representation by non-lawyers. W.D. Mich. L.R. 18(a). Plaintiffs Riddle and Cobley may not represent the other prisoners in this matter. Therefore, the court will only address the claims that pertain to Plaintiffs Riddle and Cobley.

Plaintiff Riddle complained of difficulty breathing, dizziness, sinus problems, headaches, and back pain as a result of black mold exposure. In response Defendant Prokasch-Graves told Plaintiff Riddle that his symptoms were "all in [his] head," and that he would be referred to mental health. On November 17, 2011, Plaintiff Riddle was seen by a psychiatrist via tele-med and was prescribed a "mental health medication." Plaintiff Riddle asserts that he was humiliated by the mental health referral and suffers mental instability as a result.

Plaintiff Riddle states that between May 20, 2011, and November 20, 2011, he unsuccessfully filed grievances on Defendants Napel, Alexander, Grant, and Lutgens regarding the black mold and other toxins. On November 21, 2011, Defendant Grant interviewed Plaintiff Riddle on a step I grievance and stated, "I don't give a flying f**k how many grievances you write or how many lawsuits you files [sic], I'll always back up my employees' actions . . . I determines [sic] who you see and what treatment you'll receive."

On April 1, 2013, Plaintiff Riddle and Corrections Officer Pope showed Defendant Michellon the saturated ceiling in P-dorm, which contained toxic mold spores. On April 25, 2013, Plaintiff Riddle had chest x-rays. On May 3, 2013, Plaintiff Riddle was told by a nurse that he had pneumonia. However, Plaintiff Riddle did not receive any treatment or follow-up for this condition from Defendant Kocha.

Plaintiff Cobley alleges that in December of 2012 and March of 2013 he sought health care for complaints of blood in urine, extreme leg pain, nausea, sinus problems, fatigue, muscle aches, abdominal pain, allergies, shortness of breath, joint pain, numbness and tingling in extremities, cough, mood swings, and other symptoms. Plaintiff Cobley repeatedly waited 2 to 3 weeks for a medical appointment after filling out a health care request form. Plaintiff Cobley claims that he has not been seen or treated for the above symptoms. Plaintiff Cobley alleges that he constantly smells strong odors of mold, mildew and musk, and that on May 3, 2013, he was overcome by toxic mold spores "emitting from the emergency fire exit door being open." Plaintiff Cobley also claims that inmate painters are being supplied with "outdoor exterior industrial paints," to be used inside P-dorm unit, and that this causes inmates to be exposed to toxic fumes.

Plaintiff Cobley alleges that as a prerequisite to meet the reentry qualifications for being paroled, he is required to participate in the following federally funded programming: Assaultive Offender Program (AOP), Violence Prevention Program (VPP), Sex Offender Program (SOP), substance abuse counseling (segments I and II), and Thinking for Change. Plaintiff Cobley states that Defendant Latitinen is responsible for getting inmates into the necessary programs. On August 17, 2012, and September 13, 2012, Defendant Latitinen informed Plaintiff Cobley that he would be placed in programming as determined by CFA [Correctional Facilities Administration]. Plaintiff Cobley has still not been placed in the required programming and remains ineligible for parole as a result.

Plaintiff Cobley alleges that he is Jewish and sought a Kosher diet in June of 2012. Plaintiff Cobley was given a written test regarding his knowledge of the Jewish faith. On September 3, 2012, Plaintiff Cobley filed a grievance because he had not yet been placed on a Kosher diet. On September 7, 2012, Defendant Niemisto responded to Plaintiff's step I grievance, stating that Plaintiff' Cobley's request had been forwarded to CFA Special Activities Coordinator Michael Martin. Defendant Alexander responded to Plaintiff Cobley's step II appeal by stating that a determination had not yet been made on his request for a Kosher diet. Defendant Heyns responded to Plaintiff Cobley's step III appeal on February 4, 2013, stating that his request for a Kosher diet was denied on December 3, 2012. Plaintiff Cobley states that he was never directly informed of the denial. Plaintiff Cobley continues to be denied a Kosher diet in violation of his right to freely exercise his religious beliefs.

Plaintiff Riddle alleges that on April 8, 2011, Defendant Ehle provided Assistant Attorney General Allan J. Soros with copies of Plaintiff Riddle's medical records in relation to *Riddle v. Caruso*, Case No. 2:10-cv-156 (W.D. Mich. Mar. 21, 2012) without first seeking authorization from Plaintiff Riddle. Plaintiff Riddle sent a letter to Defendant Ehle complaining about the release of his medical records to Attorney General Soros. Defendant Ehle responded by stating that MDOC Policy Directive 03.04.108 ¶ Q(12) allows the release of such information without a prisoner's written authorization or court order as needed for litigation. Plaintiff Riddle filed a grievance regarding this matter, which was rejected by Defendant Alexander, who stated that the content of Policy Directive 03.04.108 was non-grievable. Plaintiff Riddle appealed the denial of his grievance to step II and step III, but his appeals were denied by Defendants Napel and Heyns. Plaintiff claims that the release of his medical information without his consent violated his constitutional rights.

Plaintiffs Riddle and Cobley assert that Defendants have a practice of moving level I prisoners to level V for disciplinary reasons without first being given a hearing. In addition, Plaintiffs state that on some occasions this confinement may last several weeks. Plaintiffs contend that this practice violates their due process rights.

*See* docket #29.

The Court concluded that Plaintiffs Cobley and Riddle stated nonfrivolous Eighth Amendment claims against Defendants Prokasch-Graves, Grant, Napel, Alexander, Lutgens, Michellon, and Kocha regarding exposure to black mold and other toxic substances, as well as for the subsequent denial of medical care. In addition, the Court stated that Plaintiff Riddle's First and

Fourteenth Amendment claims against Defendants Ehle and Heyns regarding the improper release of his medical information are nonfrivolous. *Id.*

Defendants Alexander, Ehle, Heyns, Lutgens, Michellon, Napel, and Grant claim that they are entitled to summary judgment because Plaintiffs failed to exhaust their available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The

7

Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendants assert that Plaintiff Cobley has filed two Step III grievance appeals while incarcerated at MBP and that neither of the grievances concern exposure to black mold or other toxic substances. A review of the Step III Grievance Report for Plaintiff Cobley and the attached

8

grievances supports Defendants' assertion. *See* Docket #56-3. Therefore, it is clear that Plaintiff Cobley's Eighth Amendment claims are properly dismissed for failure to exhaust administrative remedies.

With regard to Plaintiff Riddle, Defendants Alexander, Ehle, Heyns, Lutgens, Michellon, Napel, and Grant state that he filed fifteen Step III grievance appeals while incarcerated at MBP. Defendants offer the Step III Grievance Report for Plaintiff Riddle, as well as the attached grievances, in support of their motion. *See* docket #56-4. As noted by Defendants, grievances MBP-13-08-1485-03d, MBP-13-02-0364-27b, and MBP-13-02-0335-28a were completed after Plaintiff Riddle had already filed his complaint in this case. *Id*. The Sixth Circuit has squarely held that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The administrative process must be complete before the prisoner files an action in federal court. *Id.*

Defendants Alexander, Ehle, Heyns, Lutgens, Michellon, Napel, and Grant assert that the only remaining grievance that "remotely concerns" an issue raised by Plaintiff Riddle with regard to them is Grievance MBP-12-01-0002-08z. In MBP-12-01-0002-08z, Plaintiff Riddle contends that although he authorized the release of his medical records to his sister, TD Medical Personnel (Pam) refused to release them. Plaintiff Riddle named Defendants Ehle and Grant in his step II grievance appeal, but no Defendants were named at step I. Defendants correctly note that Grievance MBP-12-01-0002-08z does not satisfy the exhaustion requirement because Plaintiff Riddle failed to name any Defendants at step I.

Plaintiff Riddle did file several other grievances while at MBP, which he exhausted prior to the filing of the instant complaint. In Grievance Numbers MBP-11-05-01310-12D1,

9

Plaintiff Riddle complained of exposure to mold and asbestos, but failed to name any Defendants at step I. *See* docket #56-5, p. 22 of 23. In MBP-12-08-02265-27B, Plaintiff Riddle named Sergeant Belfry and complained that he was allergic to food used in some of the menu items. *See* docket #56-4, p. 13 of 45. However, Sergeant Belfry was dismissed from this action on October 7, 2014. In MBP-11-10-02679-09C, Plaintiff Riddle complained of exposure to mold, asbestos and other toxic substances in the dining hall and named "Marquette Branch Prison Warden, Food Service Staff & Maintenance Department Staff." *Id.* at p. 4 of 23. Of these grievances, the only clearly identifiable Defendant who was named at step I of a grievance was Defendant Napel, identified as "Marquette Branch Prison Warden." Plaintiff Riddle's reference to "Food Service Staff & Maintenance Department Staff" does not clearly identify individual persons. *See Mahaffey v. Buskirk*, 2014 WL 2864099, at *11 nn 12-13 (E.D. Mich. June 24, 2014) (Cohn, J., adopting recommendation of Komives, M.J.) (discussing cases) (a prisoner may satisfy this requirement by referencing those involved by job title, or by providing sufficient detail to enable prison officials to discern the responsible individuals).

The remaining grievances which are offered as Exhibits by Defendants Alexander, Ehle, Heyns, Lutgens, Michellon, and Grant appear to address Plaintiff's claims against Defendant Prokasch-Graves. In step I of Grievance MBP-11-07-01755-12d1, Plaintiff Riddle complained that Defendant Prokasch-Graves denied him medical treatment on June 30, 2011. *See* docket #56-5, p. 12 of 23. In step I of Grievance MBP-11-11-02920-12D1, Plaintiff names Defendant Prokasch-Graves and asserts that on November 8, 2011, she denied him treatment for a variety of symptoms that relate to exposure to mold in his housing unit. *See* docket #56-4, p. 32 of 45. In step I of Grievance MBP-11-11-03025-12D1, Plaintiff names Defendant Prokasch-Graves and asserts that

10

on November 16, 2011, she denied him treatment for a variety of symptoms that relate to exposure to mold in his housing unit. *See* docket #56-4, p. 22 of 45. As noted above, it appears that Plaintiff Riddle exhausted his administrative remedies against Defendant Napel, but that he did not exhaust his remedies as to Defendants Alexander, Ehle, Heyns, Lutgens, Michellon, and Grant. Therefore, Defendants Alexander, Ehle, Heyns, Lutgens, Michellon, and Grant are entitled to summary judgment.

Defendants Kocha and Prokasch-Graves assert that Plaintiff Cobley should be dismissed from this action for failure to prosecute. Defendants state that Plaintiff Cobley's last known address is Marquette Branch Prison, which is the address listed on the docket sheet. On October 10, 2014, November 7, 2014, and December 15, 2014, the court sent documents to Plaintiff Cobley at MBP that were returned because Plaintiff Cobley had been released from custody. *See* docket ##31, 40, and 48. Defendants Kocha and Prokasch-Graves attempted to contact Plaintiff Cobley in order to obtain authorization to use his MDOC medical record in order to prepare a motion for summary judgment. However, this correspondence was returned as undeliverable on March 30, 2015. *See* docket #64-2, pp. 1-6 of 6. Defendants Kocha and Prokasch-Graves state that without Plaintiff Cobley's medical records, they are unable to support a motion for summary judgment on the substance of Plaintiff Cobley's claims.

According to the MDOC Offender Tracking Information System, Plaintiff Cobley was paroled on October 7, 2014. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=214866. Plaintiff Cobley has not updated his address in the seven months since his release from prison. As noted above, Defendants Kocha and Prokasch-Graves are prejudiced by Plaintiff Cobley's failure to provide a current address. Moreover, less drastic sanctions are

impractical because Plaintiff Cobley is unreachable. Therefore, Plaintiff Cobley's claims are properly dismissed for lack of prosecution.

Moreover, as noted by Defendants Kocha and Prokasch, Plaintiff Cobley's claims are also properly dismissed for failure to exhaust his administrative remedies. Defendants Kocha and Prokasch-Graves note that the MDOC Prisoner Step III Grievance Report for Plaintiff Cobley shows that from May of 2009, until December 11, 2014, Plaintiff Cobley pursued two grievances through step III. *See* docket #56-3, p. 3 of 13. In Grievance MBP-12-09-2313-20e, Plaintiff Cobley complained that he did not receive a Kosher diet. *Id.* at pp. 4-8 of 13. In Grievance MBP-12-08-2085-29z, Plaintiff Cobley complained that he had not yet been placed in a vocational program. *Id*. at pp. 9-13 of 13. Because neither of these grievances relate to the subject matter of Plaintiffs' complaint, they do not serve to exhaust Plaintiff Cobley's administrative remedies.

For the foregoing reasons, I recommend that the motions for summary judgment filed by Defendants Alexander, Ehle, Heyns, Lutgens, Michellon, Napel, and Grant (docket #55 and #60) be granted as to Defendants Alexander, Ehle, Heyns, Lutgens, Michellon, and Grant, and denied as to Defendant Napel. I also recommend that the motion for summary judgment filed by Defendants Kocha and Prokasch-Graves as to Defendant Cobley only (docket #64) be granted.


Dated: June 8, 2015                 /s/ TIMOTHY P. GREELEY
                                                Timothy P. Greeley
                                                United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).