UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

MARCEL RIDDLE, et al.,

    Plaintiffs,

v.                                                       Case No.  2:13-cv-152
                                                       HON.  GORDON J. QUIST

ROBERT NAPEL, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiffs, prisoners Marcel Riddle and Ryan Cobley, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several defendants. Plaintiff Ryan Cobley has been dismissed from this action. The remaining claims by Plaintiff Marcel Riddle are against Defendants Napel, Prokasch-Graves, and Kocha. Defendants Prokash-Graves and Kocha move for summary judgment. Plaintiff argues that Defendants Prokash-Graves and Kocha acted with deliberate indifference to Plaintiff's serious medical needs, which were caused by exposure to black mold, raw sewage and other toxic substances. Plaintiff asserts that he suffered with chronic allergic rhinitis, sinusitis, and high blood pressure, which made him more susceptible to toxic substances. Plaintiff alleges that he suffered with recurrent respiratory tract infections, eye infections, stomach infections, abnormal white blood cell counts, a heart murmur, difficulty breathing, shortness of breath, headaches, muscle spasms, anxiety, dizziness, joint pains, post nasal drip, numbness and tingling limbs, nausea, uncontrollable nerves, depression, mood swings, runny nose, sores in nose, sneezing, fatigue, acne, choking, sore throat, memory problems, abdominal pain, sweating, and other symptoms. Plaintiff alleges that he was denied access to medical care and treatment.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately

indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that

- 3 -

> a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, No. 13-5315, slip op. at 4-5 (6th Cir. Apr. 4, 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Plaintiff presented chronic medical problems that included hypertension, anxiety, headache, and reflux. Medical records attached as exhibit B, docket #72 at 94. After Plaintiff complained that he was exposed to black mold at a prison facility and was suffering from the effects of the exposure, Plaintiff was seen by Defendant Prokosch-Graves on May 5, 2011. A chest x-ray and an x-ray of Plaintiff's sinuses were ordered. Defendant Prokosch-Graves reviewed the x-rays and results from lab tests and found them to be normal. *Id*. at 98-99. She indicated that Plaintiff's complaints of fatigue may be related to his blood pressure medication. *Id*. Plaintiff was seen by nurse Mleko on May 25, 2011. Plaintiff feared that he was having a stroke, but exhibited no symptoms. *Id*. at101. Plaintiff was referred to a medical provider for elevated blood pressure and claims of dizziness. *Id*. Plaintiff was seen by Defendant Prokosch-Graves on June 3, 2011. *Id*. at 102. Plaintiff's examination was normal and Defendant Prokosch-Graves attributed Plaintiff's complaints of dizziness to his blood pressure medication. *Id*. at 103-104. Plaintiff was given a different dose of blood pressure medication. On June 6, 2011, Plaintiff reported a lessening of his dizziness, but stated that it was not completely resolved. *Id.* at 105-107. Defendant Prokosch-Graves increased the dosage of the blood pressure medication and added hydrochlorothiazide. *Id*. at 106.

On June 21, 2011, Plaintiff was seen by a mental health services provider, who noted that Plaintiff was delusional about exposure to asbestos. *Id.* at 111. Plaintiff requested a transfer to a facility that could take care of his medical concerns. *Id.* Defendant Prokosch-Graves saw Plaintiff on June 30, 2011. Plaintiff reported that he continued to experience dizziness. When Defendant Prokosch-Graves read the chart to Plaintiff indicating that Plaintiff had reported improvement in his symptoms, Plaintiff accused Defendant Prokosch-Graves of writing down the wrong information on the chart and lying. Defendant Prokosch-Graves ordered Plaintiff to leave the

clinic, because she would not argue with Plaintiff. *Id.* at 114-115. Defendant Prokosch-Graves next saw Plaintiff on July 13, 2011. Plaintiff continued to report dizziness when he changed position and headaches. *Id.* at 118-120. Defendant Prokosch-Graves took orthostatic blood pressure measurements, which revealed that Plaintiff's blood pressure changed when he changed positions. Defendant Prokosch-Graves explained to Plaintiff that this causes dizziness when a person changes position. In consultation with Dr. Bohjanen, Defendant Prokosch-Graves ordered lab tests to rule out secondary causes of Plaintiff's hypertension.

Plaintiff reported on July 26, 2011, that the MDOC tried to harm him by exposing him to mold and asbestos. *Id.* at 124. On September 9, 2011, Defendant Prokosch-Graves saw Plaintiff when he reported dizziness and heart palpitations at night. Plaintiff's examination was normal. Defendant Prokosch-Graves changed Plaintiff's medications from Zocor to Lopid and discontinued Elavil in an attempt to control Plaintiff's LDL level and reduce his dizziness. *Id*. at 135-137. Plaintiff was told to come to the clinic when he feels heart palpitations so an EKG could be performed. Plaintiff made complaints to nurse Burdick on September 28, 2011, who noted a mitral valve murmur and placed Plaintiff on sick call. *Id.* at 144. On September 29, 2011, Plaintiff was examined by Defendant Prokosch-Graves for his complaints of dizziness and heart palpitations. Defendant Prokosch-Graves' examination revealed normal findings with no murmurs. Defendant Prokosch-Graves ordered an EKG and lab tests. *Id.* at 148-150.

On October 31, 2011, Plaintiff complained that mold, dust, and sewage toxicants in the dining hall exacerbated his sinus problems. *Id*. at 152. On October 31, 2011, nurse Burdick referred Plaintiff to a medical service provider due to Plaintiff's complaints of abdominal discomfort, sinus pain, and congestion, and because Plaintiff was not taking Lopid as ordered. *Id.* at 160. On November 8, 2011, Defendant Prokosch-Graves saw Plaintiff to evaluate his cardiovascular, sinus

congestion, and gastrointestinal complaints. Plaintiff refused to take Lopid because he stated it caused heart pain and an upset stomach. *Id.* at 167. Plaintiff believed that his sinus problems were caused by mold from his shower shoes. Defendant Prokosch-Graves advised Plaintiff to make lifestyle changes since he refused to take his cholesterol medication, and indicated that they would re-check his cholesterol in about one month. Plaintiff's lab tests were normal. Claritin was ordered for sinus congestion. Plaintiff was advised to address mold issues with housing staff, to purchase Metamucil from the store, and to increase fluids. *Id.* at 169.

On November 16, 2011, Defendant Prokosch-Graves examined Plaintiff. Plaintiff believed mold in the shower stall was the cause of his sinus problems. Plaintiff also reported nausea and vomiting. *Id.* at 171. Plaintiff was in mild distress during the examination and Defendant Prokosch-Graves thought that Plaintiff's anxiety had worsened. Plaintiff examination and work-up was negative for findings. Defendant Prokosch-Graves told Plaintiff that mold complaints should be addressed with housing staff and not healthcare staff. Defendant Prokosch-Graves referred Plaintiff for mental health care. *Id.* at 172. This was the last time Defendant Prokosch-Graves treated Plaintiff, because she stopped working for the MDOC on November 2011. Plaintiff was examined by mental health services on November 17, 2011. Plaintiff reported that he heard the voice of his deceased father telling him that he was bad for the family. Plaintiff was concerned that other inmates could read his mind, could see mold, and that "they" were trying to kill him. *Id.* at 174-179. Plaintiff exhibited signs of psychosis and depression. Plaintiff was prescribed Risperdal. *Id.*

Defendant Kocha first met Plaintiff on February 7, 2012, for complaints of headache, throat pain, fever, nausea and dizziness. Defendant Kocha prescribed Amoxicillin. Id. at 203-205. On February 13, 2012, Defendant Kocha examined Plaintiff for complaints of chest pain and

stomach problems. *Id.* at 208. On March 1, 2012, Plaintiff complained of stomach issues. Defendant Kocha examined Plaintiff and suspected that he had an illness. Defendant Kocha recommended fluids, rest, and to avoid strenuous activity. *Id.* at 214-215. Defendant Kocha saw Plaintiff on March 9, 2012, and noted that Plaintiff's blood pressure was controlled. *Id.* at 224-226. Plaintiff was seen by health care on March 21, 2012, for a treatment plan review. *Id.* at 228. Plaintiff was seen on April 25, 2012, routinely by health care for Case Management. *Id.* at. 236. In July 2012, Plaintiff was treated for an ear infection. *Id.* at 253. Defendant Kocha diagnosed Plaintiff with sinusitis and chronic allergy symptoms. Defendant Kocha treated Plaintiff with Claritin. *Id.* at 258. Defendant Kocha examined Plaintiff for stomach complaints on July 31, 2012. *Id.* at 259-261. Defendant Kocha found that Plaintiff's complaints were consistent with a GI illness that would pass in a week or two. *Id.*

Defendant Kocha diagnosed Plaintiff with seasonal allergies on September 11, 2012, prescribed tear drops and a fungal cream for between Plaintiff's toes. *Id.* at 282-284. On September 17, 2012, Plaintiff had a black eye and his eye was draining. *Id.* at 285. Defendant Kocha diagnosed an infection and prescribed eye drops after evaluation by an optometrist for conjunctivitis. *Id.* at 299-302. On December 27, 2012, Plaintiff awoke in the morning with an irritated left eye. *Id.* at 313. Defendant Kocha examined Plaintiff and determined that there was no infection and that Plaintiff's eye irritation was chemical or mechanical. Plaintiff was advised about proper hygiene and to increase use of a saline rinse. *Id.* at 314-316.

Plaintiff was seen by Defendant Kocha for a routine examination on March 11, 2013. *Id.* at 329-313. Defendant Kocha adjusted Plaintiff's medications. On March 25, 2013, Plaintiff presented respiratory concerns, prior stomach issues, and an ear infection. Defendant Kocha examined Plaintiff and diagnosed an ear infection and possible pneumonia. Defendant Kocha

prescribed azithromycin, and an ear wash. *Id.* at 331-339. Plaintiff was seen by nurse on April 8, 2013, for a routine visit, who noted that Plaintiff may have bronchitis. *Id.* at 345-346. On April 16, 2013, Plaintiff complained in writing about exposure to black mold. *Id.* at 351. Plaintiff was evaluated by a nurse for his complaints. *Id.* at 352-354. On April 18, 2013, Defendant Kocha saw Plaintiff for an upper respiratory infection. Defendant Kocha prescribed an antihistamine for two weeks with a chest x-ray follow-up to rule out pneumonia. *Id.* at 355-357. A chest x-ray on April 25, 2013, showed possible bronchopneumonia and Plaintiff was prescribed Augmentin. *Id.* at 367-369.

On May 15, 2013, Defendant Kocha examined Plaintiff to check his progress. Defendant Kocha determined that the pneumonia had resolved and recommended that Plaintiff obtain allergy medication from the prison store. *Id.* at 373-375. An x-ray revealed that Plaintiff's pneumonia had resolved. *Id.* at 383. Plaintiff complained of sinus and allergy problems when he saw a nurse on June 2, 2013. The next day, Plaintiff was evaluated by Defendant Kocha. *Id.* at 384-386. Defendant Kocha instructed Plaintiff to purchase allergy tablets from the prison store. Defendant Kocha started Plaintiff on the antibiotic Bactrum. However, on June 7, 2012, Defendant Kocha discontinued the Bactrum, after Plaintiff complained of side effects. *Id.* at 387. On July 31, 2013, Defendant Kocha saw Plaintiff for complaints of excessive urination. Defendant Kocha noted that Plaintiff presented a tender prostrate and diagnosed possible prostatitis. Defendant Kocha prescribed Cipro. *Id.* at 404-405.

In the opinion of the undersigned, Plaintiff has failed to show that Defendants Prokosch-Graves and Kocha acted with deliberate indifference. The medical evidence establishes that Plaintiff received extensive medical care from Defendants. Each of Plaintiff's concerns were addressed by Defendants through examination and treatment. Plaintiff did not suffer with any

serious medical condition that had long lasting effects. Nor has Plaintiff established that any medical concern that he presented was not treated by medical care staff at the prison. Plaintiff received appropriate treatment and care at the prison that could not violate Eighth Amendment standards. In the opinion of the undersigned, Defendants are entitled to dismissal from this action.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment. Accordingly, it is recommended that Defendant's Motion for summary Judgment (Docket #72) be granted, dismissing Defendant Prokosch-Graves and Kocha from this action. If the court accepts this recommendation, Defendant Napel will be the remaining Defendant in this action.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: 10/21/2015

                                                         */s/ Timothy P. Greeley*
                                                        TIMOTHY P. GREELEY
                                                        UNITED STATES MAGISTRATE JUDGE